UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TROY D. OGLE,

          Plaintiff,

v.

                                          Case No. 02-73200

RICK HOCKER,                       Honorable Julian Abele Cook, Jr.

          Defendant.

ORDER

      The dispute in this case is based upon allegations by the Plaintiff, Troy D. Ogle, who contends that the Defendant, Rick Hocker, caused him to suffer damages through several acts of defamation as well as an intentional infliction of emotional distress ("IIED").[1] On March 11, 2005, the Court granted a summary judgment in favor of Hocker with respect to the defamation claim.[2] On August 25, 2006, the Court also granted a summary judgment to Hocker as it pertained to Ogle's IIED claim. An appeal by Ogle to the Sixth Circuit Court of Appeals ("Sixth Circuit") followed. On May 29, 2008, the Sixth Circuit (1) reinstated Ogle's claims for defamation and IIED

---

[1] Ogle initially filed his claims in the United States District Court for the Eastern District of Tennessee, in which he accused the Church of God and its leaders of defaming him. However, this case was eventually dismissed on jurisdictional issues.

[2] On June 1, 2006, the Court entered an order which denied a motion for reconsideration by Ogle. Erroneously believing that the Court had entered a summary judgment as to both of his claims, Ogle appealed this order to the Sixth Circuit Court of Appeals. However, because the Court had not ruled on his IIED claim, the Sixth Circuit dismissed Ogle's appeal for lack of jurisdiction.

1

and (2) remanded this case for further proceedings.

On March 12, 2009, Hocker filed a renewed motion for summary judgment, believing that - notwithstanding the ruling by the Sixth Circuit - he is entitled to total relief from Ogle's claims as a matter of law. On April 17th, Ogle submitted a written response in opposition to Hocker's motion which now before the Court for its review.

I.

Ogle is a self-proclaimed international evangelist and bishop who is affiliated with the Church of God, a religious organization. Hocker, is an ordained bishop in the Church of God, as well as a senior pastor at the Church of God in Virginia Beach, Virginia, also known as Freedom Fellowship.

These two parties met for the first time in 1999 during a prayer conference in Virginia. They met again during the summers of 1999 and 2000 at "camp meetings" where Ogle had been invited as a guest speaker. Hocker later accepted an invitation by Ogle to join him on a ten day ministry trip to Belgium. During their flight to Belgium on June 27, 2001, Ogle made certain remarks that Hocker thought were strange and unusual.[3]

Upon their arrival in Belgium and after checking into the same hotel room, Ogle - after approaching Hocker and uttering "in the love of Christ my brother"- kissed him on the lips. Thereafter, Hocker says that he was invited by Ogle to pray on the floor of their hotel room which involved some physical contact between these two men. Hocker describes this contact as Ogle's attempt to pull him into a sexual position. However, Ogle has a different view of the parties'

---

[3]According to Hocker, Ogle said to him that "sometimes when he preaches, he gets erections, and his shorts are wet." (Hocker Dep. 108:1-3, May 4, 2004.) Hocker also contends that Ogle "discussed with [him] the thought about men kissing men." (*Id.* at 108:8-9.)

contact, claiming that he had only symbolically embraced Hocker - and not for any improper or immoral purpose.

Hocker's stay in Belgium ended prematurely when he returned to the United States on the day after their arrival, after assuring Ogle that his decision to leave was not a result of what had transpired. However, despite his assurances to Ogle, Hocker wrote a letter on August 1, 2001 to his presiding bishop in which he outlined the alleged misbehavior by his traveling companion.[4]

During his early morning sermon on August 5, 2001, Hocker referenced the incident in Belgium by stating:

> And as I get on the plane, he begins to talk to me and I begin to realize that his doctrine is corrupt . . . . And when I get there [Belgium], he begins to manifest issues of homosexuality. He wants me to be his really good spiritual friend, quote unquote. . . . I see how easily the church can be tricked . . . . Now you listen to this - - we must protect ourselves as the church of the living God. We must protect from heresies and false doctrines and false prophets who would lead the very elect away.

Several hours later, Hocker spoke once again to his congregation in a sermon during which he stated the following:

> And I began to perceive that his doctrine was corrupt. . . . [H]e also wanted me to become his very good friend . . . . And I'm waiting on him to come back now from Belgium to face me, because I plan to face him in a counsel of ordained bishops and declare the man to be a heretic. . . . Because the enemy tried to take prophesy and the word of God and mesmerize me and take me out.

This lawsuit by Ogle followed.

---

[4]Although Hocker had asked that his "involvement" with Ogle be kept confidential, the Church of God elected to convene a fact finding committee to investigate the matter. Following this investigation, the Church of God General Trial Board found Ogle guilty of "unbecoming ministerial conduct" and suspended his license as a bishop for a period of one year. The Michigan Church of God Council subsequently approved Ogle's reinstatement. However, the International Executive Council blocked the reinstatement process.

II.

According to the Federal Rules of Civil Procedure, a summary judgment must be granted where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When considering a motion for the entry of a summary judgment, district courts must construe all reasonable inferences in favor of the non-moving party. *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 393 (6th Cir. 2008) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). If the moving party has met its burden of showing that there is no genuine issue as to a material fact, the non-moving party cannot merely rest on the allegations made in its pleadings. *See* Fed. R. Civ. P. 56(e). Under such circumstances, the non-moving party must "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (citing Fed. R. Civ. P. 56(e)). "The mere existence of a scintilla of evidence in support of the [non-moving party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

III.

In support of his request for a summary judgment, Hocker submits that Ogle has failed to establish a prima facie case of defamation. In order to state a claim of defamation in Michigan, a plaintiff must proffer "(1) a false and defamatory statement concerning the plaintiff, (2) an

4

unprivileged communication to a third party, (3)fault amounting at least to negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by publication." *Mitan v. Campbell*, 706 N.W.2d 420, 421 (Mich. 2005) (citations omitted).

Hocker asserts that Ogle, who bears the burden of proving that the alleged defamatory statements are false, has failed to satisfy his burden of persuasion. In its opinion of May 29, 2008, the Sixth Circuit determined that Ogle is a private figure plaintiff. *See Ogle v. Hocker*, 279 Fed. Appx. 391, 399 (6th Cir. 2008). Thus, the party who bears the burden of establishing falsity of a challenged statement turns on whether it pertains to a matter of public concern. *See J & J Constr. Co. v. Bricklayers & Allied Craftsmen, Local 1*, 664 N.W.2d 728, 732 n.11 (Mich. 2003) (citing *Rouch v. Enquirer & News of Battle Creek*, 398 N.W.2d 245, 256 (Mich. 1986)).

In those situations in which the plaintiff is a private figure and the alleged defamatory statement involves an issue of public concern, the law in Michigan declares that an aggrieved party bears the burden of proving falsity. *Id*. On the other hand, if the alleged defamatory statement involves a matter of private concern, the burden of proving its truthfulness lies with the defendant. *Id.*

Over a quarter of a century ago, the Supreme Court opined that the issue of whether a statement "addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers*, 461 U.S. 138, 147-48 (1983). The *Connick* Court also explained that the standard to be used in determining if a statement is a matter of public concern is the same as that which is used to gauge whether a common law action for invasion of privacy has been established. *Id.* at 143 n. 5 (citing Restatement (Second)

of Torts § 652D (1977)). Under the Restatement of Torts, an invasion of privacy exists where a matter that is publicized is one that "(a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public." Restatement (Second) of Torts § 652D (1977); *see also Doe v. Mills*, 536 N.W.2d 824, 829 (Mich. Ct. App. 1995) (in analyzing claims of invasion of privacy, Michigan courts generally have embraced the provisions of the Restatement of Torts).

On this issue, Hocker asserts that the challenged statements are matters of public concern because, in his opinion, they were "disseminated to a large public audience with an interest in adherence to the tenants of the [Church of God] and an interest in whether a pastor within the church was violating such tenant[.]" However, his contention would figuratively open the life of every clergy person up to scrutiny on the basis of an alleged interest by members of the church who seek to know if their pastor is upholding the tenets of their religion. *See Winstead v. Sweeney*, 517 N.W.2d 874, 878 (Mich. Ct. App. 1994) ("[t]he fact that [persons] engage in an activity in which the public can be said to have a general interest does not render every aspect of their lives subject to public disclosure"). Assuming, *arguendo*, that the members of the Church of God could be equated to the "public," it would be Ogle's own church in Michigan that would arguably have a legitimate interest in knowing whether he was personally upholding the ideals of his sermons. By contrast, the members of The Church of God in Hocker's church in Virginia cannot be said to have a legitimate interest in what a virtually unknown bishop (i.e., Ogle) may have done in a hotel room in Belgium. It should also be noted that even Hocker, a Church of God bishop, had not heard of Ogle prior to their first meeting at the prayer conference in Virginia.

Hocker's concern that a pastor within the larger Church of God was not following its tenets was addressed by this religious institution's purportedly confidential investigative procedure.

6

Despite Hocker's asserted interest in informing the Church of God members that a bishop had conducted himself in a manner which was purportedly contrary to their religious ideals, he acknowledges having spoken of his experiences with Ogle in Belgium to individuals other than those who were present during the Sunday sermons on August 5, 2001. Thus, the Court concludes that (1) the allegedly defamatory statements at issue involve matters of private concern and (2) Hocker will bear the burden of proving that the statements were not false.

However, even if these allegedly defamatory statements were of legitimate public concern, Ogle has proffered sufficient evidence with which to create a genuine issue of a material fact as to the falsity of the challenged statements. More to the point, he has provided his own affidavit, in which he attests that (1) he is not gay and (2) his actions in Belgium were merely acts of "brotherly love." Ogle has also provided a letter from his psychologist, Dr. Rick Gillon, who avers that his patient "does not have repressed feelings of homosexuality and that he poses no threat as a minister of the gospel."

Hocker dismisses this proffered evidence as being irrelevant because he "merely stated that a person 'manifested issues of homosexuality' not that he was a 'homosexual.'" According to the Federal Rules of Evidence, relevant evidence is that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Here, circumstantial evidence of Ogle's sexuality could make the veracity of Hocker's statement (i.e., that a person "manifested issues of homosexuality") more or less probable. Thus, the entry of a summary judgment would be inappropriate on this ground even if the allegedly defamatory statements were of legitimate public concern.

IV.

Hocker also contends that his statements were subject to a qualified duty/interest privilege, citing *Bufalino v. Maxon Bros., Inc.*, 117 N.W.2d 150 (Mich. 1962) as authority. According to *Bufalino*, the elements of a duty privilege are "[1] good faith, [2] an interest to be upheld, [3] a statement limited in its scope to this purpose, [4] a proper occasion, and [5] publication in a proper manner and to proper parties only." 117 N.W.2d at 156. However, the Sixth Circuit has already determined that because "the record is unclear about whether Hocker also disclosed the information to persons outside the church[,] . . . summary judgment would be improper on this ground." *Ogle*, 279 Fed. Appx. at 398 n. 7. Hence, this issue, having been addressed and resolved by the Sixth Circuit, need not be addressed by this Court.

V.

Next, Hocker submits that inasmuch as Ogle (1) has failed to show that Hocker published the statements at issue with actual malice and (2) cannot establish economic damages, the entry of a summary judgment would be appropriate. Ogle counters by arguing that (1) the contested statements at issue constitute defamation per se, (2) Hocker acted with malice, and (3) he has suffered economic damages as a result of Hocker's actions, for which he is entitled to exemplary and punitive damages.

The Michigan defamation statute, Michigan Compiled Laws, Section 600.2911, reads, in pertinent part, as follows:

> (1) Words imputing a lack of chastity to any female or male are actionable in themselves and subject the person who uttered or published them to a civil action for the slander in the same manner as the uttering or publishing of words imputing the commission of a criminal offense.
>
> (2) (a) Except as provided in subdivision (b), in actions based on libel or slander the

> plaintiff is entitled to recover only for the actual damages which he or she has suffered in respect to his or her property, business, trade, profession, occupation, or feelings.
>
> . . . .
>
> (7) An action for libel or slander shall not be brought based upon a communication involving a private individual unless the defamatory falsehood concerns the private individual and was published negligently. Recovery under this provision shall be limited to economic damages including attorney fees.

The Michigan Court of Appeals has held that subsection (1) of the defamation statute codifies the "common-law principle that words imputing a lack of chastity or the commission of a crime constitute defamation per se and are actionable even in the absence of an ability to prove actual or special damages." *Burden v. Elias Bros. Big Boy Restaurants*, 613 N.W.2d 378, 382 (Mich. Ct. App. 2000) (citations omitted).

Here, Ogle argues that Hocker's published statements are defamatory per se because they fully satisfy the above-cited first element under *Burden*, noting that his offensive words (1) impute a lack of chastity to him as a married man, and (2) attribute the commission of a crime to him inasmuch as sodomy is a criminal offense in Michigan. However, this Court, when ruling on Ogle's earlier motion for reconsideration of the order which had granted a summary judgment against him, held that "Hocker's contentions that Ogle 'manifest[s] issues of homosexuality' or was a 'false prophet,' 'heretic', the 'devil', or a 'preach[er of] false doctrine' cannot be construed to impute a lack of chastity." Contrary to Ogle's argument on this issue, the Sixth Circuit did not address it on appeal. Thus, the original ruling by this Court will stand.

Ogle also submits that Hocker, by contending that the prior summary judgment decision by the Court is the law of this case, is attempting to circumvent the decision of May 29, 2008 by the Sixth Circuit; namely, that "a phrase like 'manifested issues of homosexuality,' which cannot easily

9

be reduced to a clear meaning, nevertheless carries implicit factual assertions (i.e., that Ogle wished to engage in homosexual behavior)." *Ogle*, 279 Fed. Appx. at 398. However, even when considering the Sixth Circuit's interpretation of this phrase,[5] these statements by Hocker are not defamatory per se.

To bolster his contention that Hocker's statements imputed a lack of chastity upon him, Ogle cites to *Linebaugh v. Sheraton Mich. Corp.*, 497 N.W.2d 585 (Mich. Ct. App. 1993). In *Linebaugh*, the Michigan Court of Appeals had been asked to evaluate a defamation lawsuit wherein the plaintiff complained that she had been depicted with another employee in a "sexually compromising position" in a cartoon that had been drawn by the defendant. 497 N.W.2d at 586. The *Linebaugh* Court held that this cartoon constituted defamation per se because it "could be interpreted as depicting plaintiff engaged in a sexual act with a male other than her husband," thus imputing a lack of chastity to her. *Id.* at 587. However, *Linebaugh*, although evaluating the interrelationship between such issues as chastity and defamation, is inapposite to the instant action inasmuch as there is no allegation by Hocker that Ogle engaged in a sexual act with him. Even if Hocker's statements were construed to mean that Ogle had made sexual advances toward him, this case would be distinguishable from *Linebaugh*. A mere desire to engage in a sexual act falls short of its actual commission which, in turn, does not impute a lack of chastity.[6]

---

[5] The Sixth Circuit concluded that the phrase "manifested issues of homosexuality" implies that a person "engage[d] in homosexual behavior." It appears that the Sixth Circuit has equated the term "homosexual behavior" with a sexual act with a person of the same sex. Hence, the Court will construe this phrase as such.

[6] For the most part, Ogle's authority on this issue does not hold otherwise. *See, e.g. Schomer v. Smidt*, 170 Cal. Rptr. 662, 663-64 (Cal. Ct. App. 1980) (statements that plaintiff *had sex* with a co-worker of the same gender were actionable in themselves); *Baskin v. Rogers*, 493 S.E.2d 728, 730 (Ga. Ct. App. 1997) (defendant's statements alleging that plaintiff engaged in

For similar reasons, Ogle's contention that the alleged defamatory statements impute the commission of a crime is not persuasive. Ogle cites to a Michigan statute which criminalizes the act of sodomy. *See* Mich. Comp. Laws § 750.158. However, as Hocker correctly notes, there is no evidence in this record wherein he has accused Ogle of engaging in the act of sodomy. Accordingly, because Hocker's statements are not defamatory per se, Ogle must assume the burden of proffering evidence of his damages.

VI.

In those situations in which the allegedly defamatory statements are not actionable in themselves, the plaintiff must prove (1) actual damages including injury to reputation or feelings or (2) economic damages, depending upon the defendant's degree of fault. *See Glazer v. Lamkin*, 506 N.W.2d 570, 572 (Mich. Ct. App. 1993).

Subsection (7) of the Michigan defamation statute provides that if a defendant's publication of an allegedly defamatory statement is found to be negligent, the "plaintiff must prove economic damages but cannot recover for injuries to feelings." *Id.* at 573. However, subsection 2(a) provides that "if a private plaintiff proves actual malice, the plaintiff is entitled to, among other things, actual damages to reputation or feelings."

The Sixth Circuit, in holding that the ecclesiastical abstention doctrine does not bar federal court review adjudication of this case, nevertheless cautioned:

> To the extent Ogle seeks damages based on the [Church of God]'s decision to suspend him or the loss of his reputation within the [Church of God], Ogle's claims might be barred by this rule. An inquiry into these damages might require consideration of whether the defamation caused the [Church of God]'s employment

---

"*illicit sexual intercourse*" were defamatory per se) (emphasis added).

> actions, thereby inviting an exploration of the church's motives. A secular court cannot take this step.

*Ogle*, 279 Fed. Appx. at 395 n. 3; *see also Lewis v. Seventh Day Adventists Lake Region Conference*, 978 F.2d 940, 942 (6th Cir. 1992) ("First Amendment bars civil courts from reviewing decisions of religious judicatory bodies relating to . . . employment of clergy"). However, that is precisely what Ogle would have the Court do in this case with respect to his alleged economic damages. He has failed to proffer a sufficiency of evidence which causally connects Hocker's allegedly defamatory statements with the economic damages that he claims to have suffered. In his affidavit, Ogle alleges that he has experienced a loss of "ministry, livelihood, [and] financial security[.]" However, he neither explains nor states how this "loss" is attributable to Hocker's statements, and not the Church of God's decision to suspend his license, especially in light of his own acknowledgment that "the Church of God . . . was the only denomination in which [he] conducted ministry." Thus, inasmuch as Ogle has failed to proffer any evidence of economic damages caused by Hocker, he must show that his adversary in this lawsuit acted with actual malice in order to recover for his stated emotional damages. *See Glazer*, 506 N.W.2d at 573.

"To show actual malice, plaintiffs must prove that the defendant made the statement with knowledge that it was false or with reckless disregard of the truth." *Id.* This standard is not satisfied "by showing that the statements were made with preconceived objectives or insufficient investigation." *Grebner v. Runyon*, 347 N.W.2d 741, 744 (Mich. Ct. App. 1984) (citations omitted). Moreover, "ill will, spite or even hatred, standing alone, do not amount to actual malice." *Id.*

In the case *sub judice*, Ogle has not presented any evidence that would create a genuine issue of a material fact with regard to whether Hocker acted with malice. In his opposition papers, Ogle points to Hocker's deposition as evidence that this Defendant was an angry and hostile man who was

"at war" with him. However, *Grebner* indicates that neither anger nor hatred amount to actual malice. More specifically, even if a jury found that Hocker possessed all of these negative characteristics which have been attributed to him by Ogle when the allegedly defamatory statements were published by him, this evidence does not show that he (1) knew of the falsity of the statements or (2) acted with a reckless disregard for the truth. As such, Ogle, who has failed to establish that Hocker acted with actual malice, is not entitled to actual damages, including emotional harm.

Finally, Ogle believes that he is entitled to exemplary and punitive damages. The Michigan Compiled Laws provide, in part:

> Exemplary and punitive damages shall not be recovered in actions for libel unless the plaintiff, before instituting his or her action, gives notice to the defendant to publish a retraction and allows a reasonable time to do so, and proof of the publication or correction shall be admissible in evidence under a denial on the question of the good faith of the defendant, and in mitigation and reduction of exemplary or punitive damages.

Mich. Comp. Laws § 600.2911(2)(b). However, Hocker has correctly noted that the statute allows an award of these categories of damages only in libel actions. Libel is defined as "[a] defamatory statement expressed in a fixed medium, esp[ecially] writing but also a picture, sign, or electronic broadcast." Black's Law Dictionary (8th ed. 2004). It is noteworthy here that Ogle has not asserted that Hocker's publications had occurred through any fixed medium, as defined by Black's Law Dictionary.[7]

Moreover, there is no evidence that Ogle gave notice to Hocker to publish a retraction, as required by the statute. In addressing this issue, Ogle proffered a letter that had been written by his

---

[7]Although Hocker wrote a letter to his presiding bishop in the Church of God which set forth his version of the incidents in Belgium, Ogle has not contended that this letter was defamatory.

13

attorney for this purpose. However, this correspondence, which bore the date of June 6, 2002, was addressed to Dr. R. Lamar Vest, the General Overseer of the Church of God - not to Hocker. Thus, this letter does not satisfy the minimum requirements of Mich. Comp. Laws § 600.2911(2)(b).

Therefore, the Court concludes that Hocker's statements are not defamatory per se. In addition, the Court determines that Ogle (1) has not offered proof that he suffered any economic damages which have been caused by Hocker, (2) cannot establish that Hocker acted with actual malice, and (3) has failed to establish that he is entitled to any exemplary or punitive damages. As a consequence, Ogle has not satisfied the fourth element of his prima facie defamation case; namely, a special harm. *See Mitan*, 706 N.W.2d at 421 (plaintiff must show "either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by publication").

## VII.

Ogle's claim of IIED was reinstated by the Sixth Circuit only "to the extent that the trial court determines that Ogle has set forth a prima facie defamation claim." *Ogle*, 279 Fed. Appx. at 400. Hence and in light of the determination by this Court that Ogle has failed to establish a special harm (i.e., a prima facie defamation claim), the Court must also grant a summary judgment in favor of Hocker on Ogle's second count (i.e., IIED). *See Andrews v. Prudential Securities, Inc.*, 160 F.3d 304, 309 (6th Cir. 1998) (dismissing intentional infliction of emotional distress claim in light of conclusion that "plaintiffs' defamation claims may not be maintained").

## VIII.

Accordingly, and for the reasons that have been stated above, Hocker's motion for summary

14

judgment is granted.

       IT IS SO ORDERED.

October 22, 2009                          S/Julian Abele Cook, Jr.
Detroit, Michigan                     JULIAN ABELE COOK, JR.
                                          United States District Court Judge

                           Certificate of Service

I hereby certify that on October 22, 2009, I electronically filed the foregoing with the Clerk of the Court using the ECF system, and I further certify that I mailed a copy to the non-ECF participant(s).

                                        s/ Kay Doaks
                                        Courtroom Deputy Clerk