UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TROY D. OGLE,

          Plaintiff,

v.

                                            Case No. 02-73200

RICK HOCKER,                               Honorable Julian Abele Cook, Jr.

          Defendant.

## ORDER

The Plaintiff, Troy D. Ogle, filed this civil action against the Defendant, Rick Hocker, alleging claims of defamation and intentional infliction of emotional distress. Although the Court granted a summary judgment in Hocker's favor, the Sixth Circuit Court of Appeals reinstated both of Ogle's claims.

Currently pending before the Court is Hocker's renewed motion for the entry of a summary judgment regarding the economic damages on the basis of Ogle's wage loss claim. Hocker also seeks the entry of two orders in limine which, if granted, would prevent the introduction of, or reference to, evidence (1) that his comments caused Ogle to suffer any loss of wages or loss of employment opportunities outside the Church of God ("COG"), other than a position as chaplain for the City of Dearborn Heights Fire Department, and (2) of the amount of income that Ogle received

from the COG at any time or otherwise quantifying his change in income after the events here at issue.[1]

I.

Ogle and Hocker initially became friendly in 1999 as religious leaders who were affiliated with the COG. After both parties traveled to Europe to attend a ministry conference in 2001, Hocker reported alleged homosexual advances by Ogle to his presiding COG bishop, preached about the incident (without naming Ogle) at his Virginia Beach church, and repeated these allegations to a number of other individuals outside the COG. After an investigation initiated by Hocker's statements, Ogle's COG license was suspended. In addition, Ogle stopped receiving invitations to minister or speak at other churches.

This lawsuit followed. On May 11, 2005, this Court granted a summary judgment in favor of Hocker with respect to his defamation claim.[2] On August 25, 2006, the Court also granted a summary judgment to Hocker as it applied to Ogle's defamation-dependent intentional infliction of emotional distress claim. On May 29, 2008, the Sixth Circuit reinstated both of Ogle's claims and remanded the case to this Court for further proceedings. *Ogle v. Hocker*, 279 F. App'x 391 (2008) [hereinafter *Ogle I*].

On October 22, 2009, the Court granted Hocker's renewed motion for summary judgment as it applied to both of his claims, finding that Ogle had not established a special harm necessary for

---

[1]Ogle initially filed a lawsuit against the COG and its leaders in the federal district court for the Eastern District of Tennessee. However, this case was dismissed on jurisdictional grounds.

[2] On June 1, 2006, the Court denied Ogle's motion for reconsideration. He then appealed this order to the Sixth Circuit. However, because this Court had not yet ruled on the intentional infliction of emotional distress claim, the Sixth Circuit dismissed his appeal for lack of jurisdiction.

a prima facie defamation claim.³ On May 27, 2011, the Sixth Circuit reversed and remanded the case once again, holding that "Ogle [had] presented sufficient lack-of-chastity evidence for his per se claim to survive summary judgment." *Ogle v. Hocker*, 430 F. App'x 373, 374 (6th Cir. 2011) [hereinafter *Ogle II*]. The Sixth Circuit also found that Ogle had offered a sufficient amount of evidence which reflected an economic damage independent of his license suspension.

Hocker has since sought discovery regarding the limited and qualified wage loss claim permitted by the Sixth Circuit. In his responses, Ogle identified a list of potential employment sources - unassociated with the COG - to which he had applied or for which he had worked. However, he did not proffer any information regarding his compensation for any of the entities where he had been employed. However, Ogle did present information regarding his ultimately unsuccessful application to serve as the Chaplain for the City of Dearborn Heights Fire Department. According to Ogle, this potential employer had initially expressed serious interest in his candidacy. However, he had acknowledged during his interview that he was a plaintiff in this civil lawsuit. He maintains that his application was rejected after Fire Department officials discovered the nature of the allegations that gave rise to the instant lawsuit.

II.

The summary judgment rule primarily aims to "isolate and dispose of factually unsupportable claims or defenses." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24 (1986). Entry of summary judgment is proper only where the moving party shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A

---

³Specifically, this Court found that (1) Hocker's actions did not qualify as defamation per se, and (2) Ogle did not present sufficient evidence regarding economic damages to establish defamation per quod.

genuine dispute of material fact will exist if the fact in question "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). The debated facts must be supported by more than a mere scintilla of evidence in order to create a genuine dispute. *Id.* at 252.

In determining whether there is a genuine issue of a material fact, the record is viewed in the light most favorable to the nonmoving party. *Id.* at 255. Considering the substantive law, summary judgment must be entered if the non-moving party fails to present evidence that is "sufficient to establish the existence of an essential element to its case, and on which it will bear the burden of proof at trial." *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 399 (6th Cir. 2010) (quoting *Celotex*, 477 U.S. at 322). If the moving party makes its required showing, then the non-moving party must then act affirmatively in order to avoid the entry of a summary judgment. Fed. R. Civ. P. 56(e).

### III.

In support of his motion for summary judgment, Hocker contends that Ogle has failed to present a sufficiency of evidence of economic harm. Michigan law distinguishes between defamation per se wherein a defamatory statement is actionable irrespective of any special harm, and defamation per quod, which requires a showing of a special harm that had been caused by the defamatory statement. *Yono v. Carlson*, 770 N.W.2d 400, 402 (Mich. Ct. App. 2009) (citing *Frohriep v. Flanagan*, 754 N.W.2d 912, 923 (Mich. Ct. App. 2008)). In his motion, Hocker claims that Ogle has not met the required burden of showing a particularized economic harm.[4]

---

[4] As a plaintiff who pursues a defamation per quod claim, Ogle has the burden of demonstrating actual wage loss from prospective employment outside of the COG. *See, e.g.*, *Glazer v. Lamkin*, 506 N.W.2d 570, 572 (Mich. Ct. App. 1993).

Alternatively, Hocker seeks a dismissal of claims for economic damages flowing from Ogle's wage loss claim. However, previous Sixth Circuit rulings preclude the entry of a summary judgment in favor of Hocker regarding both types of defamation claim.

In Michigan, per se defamation is defined as "words imputing a lack of chastity to any female or male." Mich. Comp. Laws. § 600.2911(1). In those cases in which a plaintiff brings an action alleging defamation per se, "the inability to prove damages is not fatal to the claim." *Burden v. Elias Bros. Big Boy Restaurants*, 613 N.W.2d 378, 382 (Mich. Ct. App. 2000) ("Whether nominal or substantial, where there is defamation per se, the presumption of general damages is well settled."). The Sixth Circuit has found that Hocker's statements imputed a lack of chastity to Ogle such that his defamation per se claim must survive a summary judgment challenge. *Ogle II*, 430 F. App'x at 374. Accordingly, regardless of Ogle's ability to show economic harm, Hocker's motion for summary judgment must be denied with respect to the defamation per se claim.

Regarding defamation per quod, the Michigan defamation statute requires a plaintiff to identify actual damages caused by a special harm. *See* Mich. Comp. Laws § 600.2911(2)(a), (7). The Sixth Circuit previously found that any damages sought by Ogle based on the COG's suspension of him or the loss of his reputation within the COG may be barred by the ecclesiastical abstention doctrine, which precludes a court from hearing cases where questions of discipline, faith, ecclesiastical rule, custom, or law have been decided by church judicatories. *Ogle I*, 279 F. App'x at 395 (citing *Watson v. Jones*, 80 U.S. 679, 727 (1871)). Accordingly, Ogle cannot recover economic damages based on the COG's employment actions. *See id.* at 395 n.3 (consideration of damages based on COG's decision to suspend Ogle or loss of his reputation within COG may require impermissible exploration of church's motives). In order for his defamation per quod claim

5

to succeed, Ogle must demonstrate specific economic damages outside of the COG that were caused by Hocker's conduct.

The Sixth Circuit also found that Ogle's previously filed evidence demonstrated economic damages outside of his COG employment sufficient to overcome summary judgment.[5] Since the evidence relied upon by the Sixth Circuit remains on the record, Hocker has not shown the absence of a genuine issue of a material fact. Although Hocker argues that the reversal by the Sixth Circuit merely provided Ogle with an opportunity to offer additional evidence, this contention seems to be inconsistent with the language of its opinion. The Sixth Circuit specifically relied upon the evidence presented by Ogle that (1) Hocker told his story to people outside of the COG and (2) Ogle was rejected from opportunities to minister at non-COG churches because of rumors. Considering this, the Sixth Circuit found that "Ogle offered evidence from which a jury could reasonably find that he suffered economic losses other than COG-related income." *Ogle II*, 430 F. App'x at 376.

Given the Sixth Circuit's prior holdings, the Court finds there is sufficient evidence for a reasonable jury to identify economic losses. Consequently, the Court denies Hocker's motion for a summary judgment based upon of Ogle's alleged inability to show a particularized economic harm.

Hocker also seeks to obtain a summary judgment as it applies to Ogle's defamation-dependnent intentional infliction of emotional distress claim solely on the ground that his defamation claim fails. In light of the foregoing conclusion, the intentional infliction of emotional distress claim will also survive summary judgment.

IV

---

[5] The Sixth Circuit upheld the grant of summary judgment by this Court which prohibited Ogle from obtaining exemplary and punitive damages. *Ogle II*, 430 F. App'x at 376.

Hocker requests the entry of two orders in limine in order to prevent the introduction of or references to evidence (1) that his comments resulted in any loss of wages or employment opportunities for Ogle outside of the COG, other than with the City of Dearborn Heights Fire Department Chaplain position,[6] and (2) of Ogle's previous salary from the COG or other means of quantifying his change in income since the events here at issue.

Hocker initially argues that Ogle should be prohibited from producing any additional information regarding his actual wage loss. Ogle's claim for wage loss is limited to those wages related to employment opportunities outside of the COG that were lost due to Hocker's statements. During the post-remand discovery period, Hocker submitted requests to Ogle to provide information regarding lost employment and wage opportunities. In response, Ogle listed the positions for which he had applied, and, of those, which applications were successful. However, in response to an interrogatory which sought to obtain the bases for the rejection of his applications for other positions, he provided information regarding only one position; namely, the chaplain of the City of Dearborn Heights Fire Department.

The discovery process - as authorized by the federal rules of procedure - is designed to help the parties clarify the issues and facts prior to the commencement of the trial. *See Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351 (1978); *Hickman v. Taylor*, 329 U.S. 495, 501 (1947). Ogle argues that he should be given an opportunity to supplement the discovery process in the future since the listing of employers who did not hire him gave Hocker notice of potential trial witnesses. Since

---

[6]The Court notes that, after the completion of briefing on these motions, Hocker submitted the affidavit of the Chief of the Dearborn Heights Fire Department, who avers that (1) the position in question would have either been unpaid or resulted in, at most, a $500 annual salary; and (2) the individual who ultimately was offered the position has filled it on an unpaid, volunteer basis. Although this may affect the amount of lost wages, it does not alter the analysis herein.

discovery has already closed and Ogle has not submitted any request for an extension, the Court agrees that permitting Ogle to freely submit further evidence would merely amount to a delay which flouts the goals of the discovery process. Accordingly, the Court will grant in part the motion in limine to prevent Ogle from introducing additional, heretofore undisclosed evidence that Hocker's comments resulted in wage loss or loss of employment.

However, the Court agrees that the jury should be permitted to consider Ogle's information regarding possible losses of employment opportunities in order to determine facts relevant to the defamation claims. This order, therefore, does not prevent Ogle from relying upon or presenting at trial any previously disclosed evidence in order to support his claim to have lost wages or employment opportunities as a result of Hocker's statements. It will be the jury's ultimate duty to evaluate and weigh the probative value, if any, of this evidence.

In his motion in limine to exclude all actual income evidence, Hocker argues that this evidence is irrelevant and will unduly mislead and confuse the jury in its attempt to determine compensable damages. Within the post-remand discovery process, Ogle presented his prior COG income and post-incident income, as well as tables which projected wage loss. These tables calculated Ogle's wage loss by using the following equation; namely, prior annual income minus post-incident annual income multiplied by life expectancy. Hocker argues that this calculation is not only misleading but also irrelevant because it depends on first establishing that the wage difference is entirely composed of non-COG-based losses caused by Hocker's statements.

The Federal Rules of Evidence permit parties to submit only evidence that is relevant to the case. *See* Fed. R. Evid. 401 ("Evidence is relevant if: (a) It has any tendency to make a fact more or less probable than it would be without the evidence; and (b) The fact is of consequence in

determining the action."); Fed. R. Evid. 402. It is true that the ecclesiastical doctrine limits any damages that Ogle may receive to only those economic losses caused by Hocker's statements that occurred extrinsic to the COG. However, the Court finds that - contrary to Hocker's arguments - Ogle's previous salary from the COG is relevant in this case.

An actual damage award is an issue of fact for the jury to decide. *See, e.g.*, *Cooper Indus. v. Leatherman Tool Grp.*, 532 U.S. 424, 437 (2001). Ogle's previous and subsequent salaries will be relevant in calculating compensable damages if a jury finds that the wage difference was caused by Hocker's statements and extrinsic to COG. Since these are also questions of fact for the jury to decide, jurors should be permitted to consider Ogle's actual income evidence in order to determine any appropriate damages. While the Court recognizes the importance of clarifying the causation requirement as well as the impact of the ecclesiastical doctrine, the danger of confusion can be effectively mitigated with an appropriate jury instruction. *See* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."), 105 ("If the court admits evidence that is admissible . . . for a purpose - but not . . . for another purpose - the court, on timely request, must restrict the evidence to its proper scope and instruct the jury accordingly.").

V.

For the reasons that have been set forth above, the Court denies Hocker's motion for summary judgment. (ECF 113). In addition, the Court grants in part and denies in part Hocker's motion in limine. (ECF 112). Specifically, the motion is (1) granted as to the request to preclude Ogle from introducing previously-undisclosed evidence of lost wages; (2) denied as to the request

to preclude Ogle from presenting previously-submitted evidence regarding wage loss and lost employment opportunities; and (3) denied as to the request to bar all actual income evidence.

IT IS SO ORDERED.

Date: August 31, 2012                                     s/Julian Abele Cook, Jr.
                                                          JULIAN ABELE COOK, JR.
                                                          U.S. District Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on August 31, 2012.

                                                          s/ Kay Doaks
                                                          Case Manager